NUMBER 13-99-533-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI


___________________________________________________________________



MURRAY MICHAEL, INDIVIDUALLY, ET AL. , Appellants,



v.




LESTER DYKE, M.D. , Appellee.

___________________________________________________________________



On appeal from the 93rd District Court

of Hidalgo County, Texas.


___________________________________________________________________



O P I N I O N


Before Justices Dorsey, Rodriguez, and Seerden (1) 

Opinion by Justice Dorsey


 This is an appeal from a summary judgment. Murray Michael and STEP, Inc. (2)sued Dr. Lester Dyke and others for
various causes of action stemming from the circumstances surrounding the business competition between the parties.

 Michael is a licensed perfusionist and also a principal in STEP, Inc., a business that provides perfusion services to
hospitals. A perfusionist is a medical technician who operates the heart and lung machines during open heart surgery. 
With a partner, Michael formed the business, STEP, Inc., to provide perfusion services. That corporation employs other
licensed perfusionists.

 Michael alleges that Dr. Dyke, an open-heart surgeon, falsely criticized his company, his work, and his equipment in an
effort to divert business from Michael's company to a competing perfusion company in which Dr. Dyke held a financial
interest. Michael claims he was damaged as a result of Dr. Dyke's false claims about the quality of Michael's perfusion
services. Specifically, Michael contends that Dr. Dyke's actions caused the Heart Hospital of McAllen to violate its
contract with Michael which made Michael the exclusive provider of perfusion services at that hospital.

 Michael sued Dr. Dyke for: (1) interference with a contractual relation; (2) fraud; (3) civil conspiracy; (3) defamation; and 
(4) intentional infliction of emotional distress. Dr. Dyke brought a motion for summary judgment that the trial court
granted, and Michael appeals.

Construction of the Motion


 The first issue we must address is whether the summary judgment was granted on traditional grounds or "no-evidence"
grounds. That distinction is muddled by both parties. Careful review of the motion has revealed that it must be treated as a
traditional summary judgment. In so doing, this Court holds that where a summary judgment motion does not
unambiguously state that it is filed under rule 166a(i) and does not strictly comply with the requirements of that rule, it will
be construed as a traditional summary judgment motion.

 The failure to clarify whether summary judgment is sought under the no-evidence rule or under the traditional summary
judgment rule is one the courts of appeal see with increasing frequency. See, e.g., Kelly v. LIN Television of Texas, L.P., 27
S.W.3d 564, 568 (Tex. App.--Eastland, pet. denied.); Amouri v. Southwest Toyota, Inc., 20 S.W.3d 165, 168 (Tex.
App.--Texarkana 2000, pet. denied). This is troubling, because it has the potential of greatly increasing the burden on the
responding party.

 The distinction between a traditional and a no-evidence summary judgment is critical. The burden on a movant seeking
summary judgment on traditional grounds is great. The movant must conclusively establish that no genuine issue of
material fact exists and that the movant is, therefore, entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A
summary judgment motion must stand on its own merits. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979). Even in the absence of a response from the nonmovant, in order to be entitled to judgment, "the movant
still must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by
conclusively proving all essential elements of his cause of action or defense as a matter of law." Id. Or, as in this case, a
defendant may show entitlement to judgment by conclusively negating an essential element of the plaintiff's cause of
action. See Wornick Co. v. Casas, 856 S.W.2d 732, 733 (Tex. 1993).

 In contrast, rule 166a(i) allows a party to move for a no-evidence summary judgment on the ground that no evidence exists
of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.
Tex. R. Civ. P. 166a(i). The rule specifically states that "[t]he motion must state the elements as to which there is no
evidence." Id. If a response is not filed producing evidence that raises a genuine issue of fact on the disputed element, rule
166a(i) clearly states that the motion "must be granted." Id. There is no need for the party seeking judgment to attach any
evidence to his motion. If the respondent fails to produce evidence, the judgment will be granted; if the respondent
succeeds in producing evidence, it will not. Id.

 This Court has long recognized that the summary judgment rule, and all other rules of civil procedure, "were never
designed as traps for the unwary nor should they be construed in order to prevent a litigant from presenting the truth to the
trier of facts." Bynum v. Shatto, 514 S.W.2d 808, 811 (Tex. Civ. App.--Corpus Christi 1974, writ ref'd n.r.e.). Summary
judgment was intended to be a procedure to allow summary dismissal of "patently unmeritorious claims or untenable
defenses." See Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952). In a traditional summary judgment, "the
nonmovant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the
movant's right." McConnell v. Southside Independent School Dist., 858 S.W.2d 337, 343 (Tex. 1993) (citing Clear Creek,
589 S.W.2d at 678). Failure to respond to a no-evidence motion is fatal.

 We agree with our sister courts that "the better practice is either to file two separate motions, one containing the no
evidence summary judgment and one containing the ordinary summary judgment, or to file one document containing both
motions but with the arguments and authorities for each clearly delineated and separate from one another." Grant v.
Southwestern Elec. Power Co., 20 S.W.3d 764, 768 (Tex. App.--Texarkana 2000, pet granted); see also Banzhaf v. ADT
Sec. Systems Southwest, Inc., 28 S.W.3d 180, 184 n.3 (Tex. App.--Eastland 2000, pet. denied). When it is not readily
apparent to the trial court that summary judgment is sought under rule 166a(i), the court should presume that it is filed
under the traditional summary judgment rule and analyze it according to those well-recognized standards. Also, an order
granting summary judgment should clarify whether the motion is granted on no-evidence grounds or traditional grounds. 
When an order fails to so clarify, a motion requesting such clarification should be filed with the trial court. (3)

 In this case, we treat Dr. Dyke's motion as a traditional summary judgment motion. His motion intermixes language from
the traditional summary judgment rule and the no-evidence rule, fails to clearly state under which rule summary judgment
is sought, fails to follow rule 166a(i) precisely by identifying the particular elements in dispute, and attaches evidence that
would be appropriate for a traditional motion, but not a no-evidence motion. Treating it as a traditional summary
judgment, we review the trial court's granting of the motion de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.
1994); Texas Commerce Bank Rio Grande Valley v. Correa, 28 S.W.2d 695, 699 (Tex. App.-- Corpus Christi 2000, pet.
denied). Dr. Dyke was required to establish that there existed no genuine issue of material fact and that judgment should be
granted as a matter of law. Tex. R. Civ. P. 166a; Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex.
1985). We must presume all evidence favorable to Michael to be true, and must indulge all reasonable inferences and
resolve any doubts in his favor. Nixon, 690 S.W.2d at 548-49.

Intentional Interference with Contractual Relations,

Fraud, and Civil Conspiracy Causes of Action


 In his motion, Dr. Dyke contends that Michael is unable to establish at least one essential element for each of his causes of
action for interference with contract, fraud and civil conspiracy. As proof, Dkye attached excerpts from Michael's
deposition as an exhibit. In the motion itself, Dr. Dyke referred to the following excerpts from that exhibit, contending that
this passage shows that Michael cannot establish an essential element on each of the three causes of action:

 Q. You don't have any evidence that he was an owner of that company during this period of time?



 A. No, I don't have any evidence.



 Q. Okay. In your lawsuit you say that Dr. Dyke proceeded to disparage the quality of work provided by STEP, okay? 
What -- what did he say to disparage the quality of work provided by Step and when did he say it?



 A. Well, as I stated before, he never said anything directly to me. He said it to the administrators at the Heart Hospital. I --
I --



 Q. What do you consider -- I'm sorry. I'll let you finish.



 A. I think if Dr. Dyke really had a specific problem with me, he would approach me directly. And I -- I think it was his
attempt to get his perfusionist into the Heart Hospital for -- for business advantage for MPA.



 Q. All right. You stated in your lawsuit that all the defendants, Dyke, Gashette and the hospital and Hetzler committed
conspiratorial acts to interfere with your contract. What conspiratorial acts did they commit?

 

. . .


 Q. Anything else that you can think of that he conspired with anybody else?



 A. I have no direct evidence.



This excerpt "proves" nothing material.

 We begin with the fraud cause of action. We must determine whether Dr. Dyke's summary judgment evidence
conclusively established the lack of an essential element of Michael's cause of action. The elements of a cause of action for
fraud are: (1) a material misrepresentation was made; (2) the misrepresentation was made recklessly or with knowledge of
its falsity; (3) the misrepresentation was made in anticipation of reliance upon it; and (4) actual reliance occurred which
resulted in damages to the plaintiff. Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex. 1983). Neither the excerpts contained
in the motion nor the larger excerpts attached as an exhibit establishes the lack of any of those elements. We hold the trial
court erred in granting summary judgment on Michael's fraud cause of action.

 Likewise, Dr. Dyke's evidence fails to defeat Michael's interference with contract cause of action. The elements of a cause
of action for tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful
and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual
damages or loss. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). Again, the summary judgment
evidence produced by Dr. Dyke does not negate any of those elements.

 The civil conspiracy cause of action is much the same. The essential elements of a civil conspiracy cause of action are: 
(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4)
one or more unlawful, overt acts; and (5) damages as the proximate result. Massey v. Armco Steel Co., 652 S.W.2d 932,
934 (Tex. 1983). Again, Dr. Dyke's summary judgment evidence does not negate any of those elements. We hold the court
erred in granting summary judgment over the conspiracy and interference with contract claims.

Breach of Contract


 Next, Dr. Dyke's motion addresses Michael's claim for breach of contract. However, Michael's breach of contract claims
were not leveled at Dr. Dyke, but were made against Dr. Dyke's co-defendants. Thus, the trial court could not have granted
summary judgment in favor of Dr. Dyke on this particular cause of action because the pleadings would not support it.

Defamation


 To negate an essential element of Michael's defamation cause of action, Dr. Dyke offered a different portion of Michael's
deposition. In that excerpt, Michael admitted that he did not know what the specific statements made by Dr. Dyke and
others were that disparaged his work, and he admitted that none of those statements were made to him personally. Without
offering any explanation, Dr. Dyke alleges that this testimony negates an essential element of Michael's defamation cause
of action.

 In both libel and slander the issues are whether the utterance was made, if it was false, if it damaged the complainant and if
the speaker had any privilege. Peshak v. Greer, 13 S.W.3d 421, 426 (Tex. App.--Corpus Christi 2000, no pet.);
Restatement (Second) of Torts § 558 (1977). Dr. Dyke has failed to negate any of these elements with his proof. We hold
the trial court erred in granting summary judgment on Michael's defamation cause of action.

Intentional Infliction of Emotional Distress


 The section of Dr. Dyke's summary judgment motion addressing the intentional infliction of emotional distress claims is
brief. Without pointing to any piece of evidence, it states, simply:

 In support of the ground for summary judgment as to intentional infliction of emotional distress gross negligence,
Defendant states that there is no clear and convincing evidence that any of the actions were committed by Defendant, Lester
Dyke, M.D., therefore, any action for intentional conduct fails.



 Dr. Dyke's burden was to establish that no genuine issue of material fact exists and that he is entitled to judgment as a
matter of law on this cause of action. See Tex. R. Civ. P. 166a. To do so, he must conclusively negate at least one element
of Michael's cause of action. Accord Wornick Co., 856 S.W.2d at 733.

 The elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the
conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the
emotional distress that the plaintiff suffered was severe. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993). Dr. Dyke
has failed to negate any of these elements.

 Without offering proof of his own to negate an element of Michael's cause of action, Dr. Dyke is in the position having to
point to the bare allegations in Michael's petition to argue that a cause of action for intentional infliction of emotional
distress could not possibly lie under the facts as pled. When a summary judgment movant offers no evidence and relies
solely on the plaintiff's pleadings, courts of appeal examine the pleadings de novo to determine whether they state a
cognizable cause of action. Higbie Roth Const. Co. v. Houston Shell & Concrete, 1 S.W.3d 808, 811 (Tex. App.--Houston
[1st Dist.] 1999, no pet.). However, "[s]ummary judgment based on a pleading deficiency is proper [only] if a party has
had an opportunity by special exception to amend and fails to do so, or files a further defective pleading." Natividad, 875
S.W.2d at 699. There is no indication in the summary judgment record that any such special exception was filed. We hold
the trial court erred in granting judgment against Michael on his cause of action for intentional infliction of emotional
distress.

Request for an Accounting


 Finally, we turn to the matter of Michael's request for an accounting. Although it was not mentioned in Dr. Dyke's
summary judgment motion, both parties make arguments to this Court regarding that claim. Michael argues that because
Dr. Dyke did not mention the accounting in his motion, summary judgment could not have been granted on that basis. Dr.
Dyke argues that because Michael has no breach of contract claim against Dr. Dyke, Michael is unable, as a matter of law, 
to show entitlement to the remedy of an accounting. 

 An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause
of action. Compare Hutchings v. Chevron U.S.A., Inc., 862 S.W.2d 752, 762 (Tex. App.--El Paso 1993, writ denied)
(treating accounting as an equitable remedy for determining amount of damages) withPalmetto Lumber Co. v. Gibbs, 124
Tex. 615, 626-27, 80 S.W.2d 742, 748 (1935)(treating an "accounting" as a separate cause of action, rooted in equity). It is
a flexible, equitable remedy that may apply in various scenarios according to the sound discretion of the trial court. See,
e.g., Gifford v. Gabbard, 305 S.W.2d 668, 672 (Tex. Civ. App.--El Paso 1957, no writ); Southwest Livestock & Trucking
Co., 884 S.W.2d at 810. An equitable accounting is proper when the facts and accounts presented are so complex that
adequate relief may not be obtained at law. Hutchings v. Chevron U.S.A., Inc., 862 S.W.2d 752, 762 (Tex. App.--El Paso
1993, writ denied).

 Michael's petition requests an accounting in the form of a remedy, not as a separate claim for relief. He alleges that it
would be impossible to determine the amount of damages he incurred due to the hospital's breach of contract and Dr.
Dyke's interference with the perfusion contract without an accounting. The issue of whether Michael is entitled to an
accounting cannot be reached unless it is first determined that he is owed at least some damages. We express no opinion
regarding whether or not an equitable accounting will be available to Michael if he prevails on either of those causes of
action. Here, we hold only that Michael's claim for an accounting was made as a part of his other causes of action, and not
as an independent claim, and thus, independently, it was not addressed in the summary judgment order.

 Having found the trial court erred in granting summary judgment in favor of Dr. Dyke on all of Michael's causes of action,
we reverse the trial court's order and remand this cause for further proceedings consistent with this opinion.



______________________________

 J. BONNER DORSEY,

Justice



Publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 1st day of March, 2001.

1. Senior Justice Robert Seerden assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.
Gov't Code Ann. § 74.003 (Vernon 1998).

2. "STEP Inc." stands for South Texas Extracorporeal Professionals, Inc. Murray Michael brought suit in both his capacity
as an individual and as President of STEP, Inc. Except where otherwise indicated, all references to "Michael" also include
the corporation.

3. We respectfully disagree with the Amarillo Court of Appeals' position that the specificity requirement of a no-evidence
motion is satisfied if the grounds in the motion give "fair notice" to the nonmovant of the nature of the motion and the
elements that are challenged. Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 194 (Tex. App.--Amarillo 1999, pet.
denied). See also Garrett v. L.P. McCuistion Community Hosp., 30 S.W.3d 653, 2-3 (Tex. App.--Texarkana 2000, no pet.
h.); Thomas v. Clayton Williams Energy, Inc., 2 S.W.3d 734, 741 n.1 (Tex. App.--Houston [14th Dist.] 1999, no pet.). This
Court takes the position that the requirements of Rule 166a(i) are to be strictly construed. Moreover, the court in Roth held
that a failure to challenge a deficient no-evidence motion through special exceptions waives those deficiencies in the
motion for purposes of appeal, citing City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 679 (Tex. 1979)
and Tex. R. Civ. P. 166a(c) for that proposition. As we have explained in this opinion, we believe the better approach is to
construe no-evidence motions strictly, at both the trial and appellate levels, to avoid improperly shifting the burden.